IN THE DISTRICT COURT OF THE UNITED STATES FOR THE

MIDDLE DISTRICT OF ALABAMA, NORTHERN DIVISION


| | | |
|---|---|---|
| BRENDA PENN, | ) | |
| | ) | |
|     Plaintiff, | ) | |
| | ) | CIVIL ACTION NO. |
|     v. | ) | 2:04cv733-T |
| | ) | (WO) |
| DEPARTMENT OF CORRECTIONS, | ) | |
| et al., | ) | |
| | ) | |
|     Defendants. | ) | |


OPINION

Plaintiff Brenda Penn, a woman over the age of 40,
filed this lawsuit claiming that the Alabama Department
of Corrections (ADOC) and several of its officers denied
her requests to work overtime, because of her gender and
age and in retaliation for filing an administrative
charge of discrimination, all in violation of Title VII
of the Civil Rights Act of 1964, as amended, 42 U.S.C.A.
§§ 1981a, 2000e through 2000e-17; the Age Discrimination
in Employment Act of 1967 (ADEA), 29 U.S.C.A. §§ 621-634;
and the Fourteenth Amendment to the United States

Constitution, as enforced through 42 U.S.C.A. § 1983. Penn names the following as defendants: ADOC, Prison Wardens Terrence McDonnell and Leeposey Daniels, and Correctional Officers Phillis Billups, John Crow, Franklin Brown, and Michelle Ellington. Jurisdiction over all claims is proper under 42 U.S.C.A. §§ 1331 (federal question) and 1343 (civil rights); jurisdiction over the ADEA claim is proper under 29 U.S.C.A. § 626, and jurisdiction over the Title VII claim is proper under 42 U.S.C.A. § 2000e-5(f)(3).

This case is currently before the court on the defendants' motion for summary judgment. The motion will be granted.


I. SUMMARY-JUDGMENT STANDARD

Summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

2

that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The court's role at the summary-judgment stage is not to weigh the evidence or to determine the truth of the matter, but rather to determine only whether a genuine issue exists for trial.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986).  In doing so, the court must view the evidence in the light most favorable to the non-moving party and draw all reasonable inferences in favor of that party.  Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986).

## II. BACKGROUND

The following facts are construed in Penn's favor as the non-moving party: Penn has worked as an ADOC correctional officer since 1976.  During the times relevant to this lawsuit, she was assigned to first shift at the Kilby Correctional Facility; during 2003 and 2004, she volunteered to work overtime on third shift at Kilby,

3

and in 2004 volunteered to work overtime at the
Montgomery Community Work Center.[1]

## A. Kilby Correctional Facility

On April 25, 2003, Correctional Officer Billups (who
was in charge of third shift) was notified by a
memorandum from Correctional Officer Crow (Penn's
immediate supervisor) that Penn had been late or
completely failed to show up for overtime work on Kilby's
third shift on at least four occasions.[2]  On April 30,
Penn, Crow, and Billups met and discussed her tardiness-
attendance problems.   During this meeting, Penn was
advised that further incidents could result in her not

---

1. Defendants' brief in support of summary judgment
(Doc. No. 28), Deposition of Brenda Penn, pp. 12-13, 19-
20, 82-83.

2. _Id._, Affidavit of Phyllis Billups, p. 2 &
attachments (April 25, 2003 Memorandum from John Crow);
Affidavit of Terrance McDonnell, p. 1. Under ADOC rules,
employees are tardy unless they are at their assigned
post when the shift begins. Plaintiff's brief in
opposition to Defendants' motion for summary judgment
(Doc. No. 33), Deposition of Brenda Penn, p. 37.

being allowed to work overtime.  On May 1, Crow advised Billups that Penn had been late again, and Penn had another meeting to discuss her tardiness.[3]

On May 7, 2003, Crow again advised Billups that Penn had arrived to her post late.  Although Penn had arrived to Kilby on-time, she did not report to her post until 2:02 a.m. (two minutes after the shift start-time).  She had been told the previous day that she would work at Central Control, but when she arrived there at 1:58 a.m., she was notified for the first time that she had to work at Tower 5.  Penn arrived to her post tardy that day because Crow changed her assignment without notice and delayed her in a corridor while holding his finger near her face and yelling at her for being late.[4]

---

3. Defendants' brief in support of summary judgment (Doc. No. 28), Affidavit of Phyllis Billups, p. 2.

4. Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 33), Deposition of Brenda Penn, pp. 31-40.  ADOC does not have a policy that requires advance notice to employees of their assignment. Id., pp. 33-36.

The next day, Penn was advised that, because of her continued tardiness, she could not work overtime on third shift at Kilby until further notice.  At Penn's request, Kilby Warden McDonnell met with Billups, Crow, Penn, and a Lieutenant Bolling to discuss the denial of overtime. McDonnell advised Penn that her removal from overtime on third shift was not permanent and she could still work overtime on first and second shifts.  Penn indicated that she did not wish to work on third shift again and would get sufficient overtime on first and second shift.

On October 6, 2003, McDonnell told Billups to allow Penn to work overtime on third shift again, but to let Penn know that further tardiness would result in disciplinary action.[5]  On October 14, Penn filed a charge with the Equal Employment Opportunity Commission (EEOC) claiming that she had been discriminated against because

_____

5. Defendants' brief in support of summary judgment (Doc. No. 28), Affidavit of Phyllis Billups, p. 3.

of her gender and age when ADOC refused to allow her to work overtime at Kilby.[6]

During the time in question, Correctional Officers Moore and Anderson, who are both males under the age of 40, were caught sleeping on the job, yet they were not denied the opportunity to work overtime; instead, they were suspended without pay from working their regular shifts. Officer Rowe, who is male and under 40, was in a car accident that occurred while he was driving in heavy fog while working overtime, yet he was not denied the opportunity to work overtime or suspended.[7] Correctional Officer Hartman, Walters, Armstrong, Barnes, and Jarrett, all of whom are male and under 40, arrived to overtime late, or failed to show up, on only one occasion, but none was disciplined. Officer Stafford,

─────────────────

6.  Id., Ex. 1, EEOC charge.

7.  Penn maintains that Rowe fell asleep at the wheel. Id., Deposition of Brenda Penn, p. 118-20. Her testimony, however, consists of inadmissible hearsay, see Fed. R. Evid. 802, so the court cannot consider it on summary judgment, see Fed. R. Civ. P. 56(e).

7

who is a 39-year old female, was tardy to overtime on first shift once and failed to report for scheduled overtime on second shift once; she was not suspended from overtime on either shift.[8] Finally, Jerome Turner, a male employee under the age of 40, failed to report for overtime on second shift on several occasions, received a written warning that future incidents would result in his suspension from overtime, and then failed to report for scheduled overtime; he was then suspended from overtime on second shift at Kilby.[9]

## B. Montgomery Community Work Center

Penn began working overtime at the Montgomery Community Work Center in April 2004. Penn was suspended from working overtime at the center for a month,

---

8. Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 33), Deposition of Brenda Penn, pp. 110-121.

9. Defendants' brief in support of summary judgment (Doc. No. 28), Affidavit of Phyllis Billups, p. 4 & attachments (May 23, 2003 Memo to Jerome Turner and May 30, 2003 Memo to Jerome Turner).

beginning mid-June 2004, because her supervisors believed that she had been tardy to scheduled overtime shifts. Correctional Officers Ellington and Brown told Work Center Warden Daniels that Penn had been late to work. Penn does not directly dispute that she was late, but rather contends that Ellington and Brown confused her with another employee named Kramer Penn, who had been tardy.[10]

When Penn learned she was denied overtime, she complained about the mistake through the chain of command, and her complaint was ultimately reviewed by ADOC Commissioner Campbell.[11]   She was reinstated to overtime at the Work Center on July 7, 2004, pursuant to a memorandum from Commissioner Campbell.[12]   The memo stated that "effective immediately" employees could be

_____

10.   Id., Deposition of Brenda Penn, pp. 82-89.

11.   Id., pp. 89-91.

12.   Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 33), Ex. H, July 7, 2004 Memo to Brenda Penn.

denied the opportunity to work overtime only if ADOC
Deputy Commissioner approved of that action.[13]

The EEOC issued Penn a right-to-sue letter on May 5,
2004.[14]   Penn filed this lawsuit on July 30, 2004.


### III. DISCUSSION

Penn alleges that the defendants prevented her from
working overtime at Kilby because of her age and gender.
She also claims that she was denied overtime in
retaliation for her allegations of discrimination.  Under
Title VII, it is illegal for an employer "to fail or
refuse to hire or to discharge any individual, or
otherwise discriminate against any individual with
respect to his compensation, terms, conditions, or
privileges of employment, because of such individual's
... sex ...," 42 U.S.C.A. § 2000e-2(a)(1); similarly, the
Fourteenth Amendment, as enforced through § 1983,

_____

13.   Id., Ex. F, Minutes from July 8, 2004 Staff
Meeting.

14.   Id., Ex. B, EEOC Dismissal and Notice of Rights.

10

prohibits gender discrimination in employment.  The ADEA
prohibits an employer from failing or refusing to hire
any individual or otherwise discriminating against any
individual with respect to compensation, terms,
conditions, or privileges of employment because of such
individual's age; the protected class under the ADEA
includes individuals over the age of 40.  29 U.S.C.A. §
621 (a)(1).  Employers are also prohibited from
retaliating against employees who have made a charge of
discrimination.  42 U.S.C.A. § 2000e-3(a) (Title VII); 29
U.S.C.A. § 623(d) (ADEA).

This case is governed by the familiar burden-shifting
analysis of McDonnell Douglas Corp. v. Green, 411 U.S.
792 (1973).  Under the McDonnell Douglas approach, an
employee has the initial burden of establishing a prima-
facie case of unlawful employment discrimination or
retaliation by a preponderance of the evidence.  Id. at
802; Young v. General Food Corp., 840 F.2d 825, 828 (11th
Cir. 1988).  If the employee establishes a prima-facie

11

case, the burden then shifts to the employer to rebut the presumption by articulating legitimate, non-discriminatory and non-retaliatory reasons for its employment action. <u>Chapman v. AI Transport</u>, 229 F.3d 1012, 1024 (11th Cir. 2000). The employer has the burden of production, not of persuasion, and thus does not have to persuade a court that it was actually motivated by the reason advanced. <u>See, e.g.</u>, <u>Texas Dep't of Cmty Affairs v. Burdine</u>, 450 U.S. 247, 253-55, 258 (1981); <u>McDonnell Douglas</u>, 411 U.S. at 802.

Once the employer satisfies this burden of production, "the presumption of discrimination [or retalitaion] is eliminated and 'the [employee] has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable factfinder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision.'" <u>Chapman</u>, 229 F.3d at 1024 (citations omitted). The

employee may meet this burden by persuading the court that a discriminatory or retaliatory reason more than likely motivated the employer or by demonstrating that the proffered reason for the employment decision is not worthy of belief.  Burdine, 450 U.S. at 256; see also Young, 840 F.2d at 828.


### A.  Disparate Treatment

There are multiple ways to establish a prima-facie case of gender or age discrimination.  Schoenfeld v. Babbitt, 168 F.3d 1257, 1268 (11th Cir. 1999); Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1185 (11th Cir. 1984).[15]   As a general principle,

---

15.  For example, an employee may state a prima-facie case of disparate treatment by showing (1) she belongs to a protected group, (2) she experienced an adverse employment action, (3) her employer filled her position with someone outside the protected class, and (4) she was qualified for her job.  Bogle v. Orange County Bd. of County Comm'rs, 162 F.3d 653, 656-57 (11th Cir. 1998). A plaintiff can also state a prima-facie case by showing (1) she belongs to a protected group, (2) she experienced an adverse employment action, (3) her employer treated similarly situated employees outside her protected group (continued...)

13

"demonstrating a prima facie case is not onerous."
Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997).
Because Penn asserts much of the same evidence in the
prima-facie and pretext stages of the burden shifting
framework, this court will assume, without deciding, that
she has presented a prima-facie case of gender and age
discrimination and proceed directly to the second and
third prongs of the McDonnell Douglas test.

ADOC has articulated a legitimate, non-discriminatory
reason for suspending Penn from overtime.[16]  Specifically,

_____

15.  (...continued)
more favorably, and (4) she was qualified for the job.
Holifield v. Reno, 115 F.3d 1555, 1562 (11th Cir. 1997)

16.  Penn also relates an episode in February 2003
when she was required to work in the control tower with
the lights off.  This requirement is in accordance with
the Standard Operating Procedures of ADOC.  Apparently,
her supervisor even found her a flashlight when she
stated that she did not have one.  Defendants' brief in
support of summary judgment (Doc. No. 28), Deposition of
Brenda Penn, pp. 53-59.  To the extent this incident is
relevant at all, it certainly does not support her gender
or age-discrimination claims.  Penn offers no evidence
she was treated differently from other employees, offers
no explanation why it would constitute an adverse-
employment action, and offers no evidence that the
(continued...)

ADOC maintains that it suspended Penn from overtime because she was repeatedly tardy or failed to show up for overtime duty and persisted in her misconduct after being 'counseled' by her supervisors that future misconduct would result in her removal from overtime on third shift at Kilby.

Penn argues that this explanation is pretextual for two reasons. First she maintains that other employees outside her protected classes engaged in similar misconduct, yet were not suspended from overtime. Second, she maintains that Officer Crow caused her to be late on May 7, 2003.[17]

_____

16. (...continued)
episode was in any way related to her gender or age.


17. Penn also contends that the decision to suspend her from overtime violated ADOC policies and procedures, so it must be pretextual. No evidence supports this contention. The record evidence merely reflects that the Commissioner of ADOC, in response to her complaint about being suspended from the Work Center, determined that "effective immediately" no employee could be denied approval without approval from the Commissioner's office.

(continued...)

## 1. Comparator Evidence

Penn maintains that ADOC's explanation is not worthy
of belief because she was the only person suspended from
overtime, even though other employees who were male or
under the age of 40 also engaged in misconduct.  In order
to make a valid comparison of the plaintiff's treatment
to that of non-protected employees, the plaintiff must
show that she and those employees are similarly situated
in all relevant respects.  Holifield, 115 F.3d at 1562.
"[T]he  quantity  and  quality  of  the  comparator's
misconduct [must] be nearly identical to prevent courts

_____

17.  (...continued)
     Even if her contention were supported by the record,
it does not help her cause.  Her supervisors were just as
likely  to  violate  ADOC  procedures  to  prevent  an
unreliable  person  from  working  on  their  shift  as  they
were to do so because she was a woman or over 40 years
old.  Simply put, the fact that her supervisors may have
violated ADOC procedures sheds no light on the reasons
behind their decision.

     Finally, ADOC suspended Jerome Turner, a male under
the  age  of  40,  from  overtime  for  nearly  identical
conduct.   This  undermines  any  inference  that  ADOC
violated its policies because of Penn's gender or age.

16

from second-guessing employers' reasonable decisions and confusing apples with oranges." <u>Maniccia v. Brown</u>, 171 F.3d 1364, 1368 (11th Cir. 1999).  Thus, for both the gender discrimination and age-discrimination claims, Penn must identify comparators outside the relevant protected classification whose conduct was nearly identical to hers and were not disciplined.

### i.  Gender

Penn contends that Officers Moore and Anderson, who are both male, were caught sleeping on the job, yet they were not denied the opportunity to work overtime.  The misconduct of Officers Moore and Anderson is not identical to being repeatedly late for work or failing to show up for work, so they are not valid comparators.  But more importantly, they, like Penn, were punished for their misconduct, by being suspended from work without pay, which is arguably a more severe punishment than simply being denied the opportunity to work overtime.

17

This undermines any inference of that they were treated more favorably because of their gender or age.

Penn notes that Officer Rowe caused a car accident but was not suspended or denied overtime.  First, being in a car accident is not sufficiently identical to failing repeatedly to arrive for work on time.  Second, the car accident occurred in heavy fog, and there is no admissible evidence in the record to suggest that the accident was caused by any wrong-doing on Rowe's part. Because Rowe's alleged misconduct differs so profoundly from Penn's, no reasonable fact-finder could find that the failure to discipline Rowe suggests that ADOC's proffered reason for disciplining Penn is pretextual.

Penn also contends that ceratin male employees showed up late for overtime work or failed to show up at all, yet they were not denied the opportunity to work overtime.  Officers Hartman, Walters, Armstrong, Barnes, and Jarrett, all of whom are male, arrived to overtime late, or failed to show up, on only one occasion, and no

evidence in the record suggests that they persisted in their misconduct after a counseling session. Therefore, their misconduct was not of the same quantity or quality as Penn's. Because their conduct was not nearly identical, they are not valid comparators.

### ii. Age

Officers Hartman, Walters, Armstrong, Barnes, Jarrett, Rowe, Moore, and Anderson are also under the age of 40. However, as described above, they are not valid comparators for Penn's age-discrimination claim because their misconduct was not sufficiently identical to that of Penn.

For the purposes of this claim, however, Penn identifies an additional comparator, Officer Stafford, who is a 39-year old female. Stafford was tardy to overtime on first shift once and failed to report for scheduled overtime on second shift once. Whereas Penn was repeatedly late for overtime on the same shift,

Stafford was late only once to each shift.  Even if the court ignored this distinction, Penn was late or failed to report for overtime at least six times, while Stafford was late or failed to report twice.  Thus, Penn's misconduct was greater in quantity than Stafford's. Moreover, there is no evidence that Stafford was warned, yet persisted in her misconduct, whereas Penn persisted in her tardiness even after a warning.  Therefore, Penn's misconduct was also more severe in its quality than Stafford's.   Accordingly, Stafford is not a valid comparator.

Finally, ADOC suspended Jerome Turner, a male under the age of 40, from overtime.  Tuner was late or failed to show up, was warned, and then persisted in his misconduct before he was suspended.  Thus, his conduct was nearly identical to Penn's, but he was disciplined in the same manner as Penn.  The fact that ADOC applied the same disciplinary procedure to another employee who had engaged in nearly identical misconduct undermines any

20

inference that its decision to suspend Penn from overtime at Kilby was discriminatory.

### 2. Correctional Officer Crow's Conduct

Penn does not dispute that she was tardy or failed to report for scheduled overtime shifts on several occasions prior to April 25, 2003, that she was warned on April 30 that future tardiness would result in the denial of overtime on third shift at Kilby, and that she was tardy on May 1.  However, she contends that she arrived to her post late on May 7 solely because Crow changed her assignment without notice and stopped her in the lobby.

Although Penn fails to articulate why this is relevant, the court will do its best to complete her argument.  The memo that informed Penn that she had been suspended from overtime on third shift stated that she had been 'counseled' on April 30 and was late again on May 7.  Thus, although she was also late on May 1, the stated reason for the suspension was her tardiness on May

21

7. Presumably, Penn means to suggest that ADOC's explanation is pretextual because her tardiness on May 7, the stated basis for her suspension, was caused by a supervisor.

However, an "employer may [take adverse action against] an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." Nix v. WLCY Radio/Rahall Communications, 738 F.2d 1181, 1187 (11th Cir. 1984). While it certainly seems unfair to penalize someone for misconduct caused by a supervisor, Penn has advanced no evidence to suggest Crow's conduct was motivated by a discriminatory reason.

The court is not suggesting that Crow did not harbor some personal ill-will against Penn.[18]   However, even assuming that Crow changed the schedule and delayed Penn in order to make Penn late, Penn has presented no

_____

18.  Crow raised his voice when he confronted Penn on May 7, 2003, stuck his finger in her face, and accused Penn of thinking she was above the rules.

22

evidence that Crow took such actions because of her gender or age.   Simply put, Penn has presented no evidence that Crow's decision to change her assignment, which did not violate ADOC policies, was motivated by a discriminatory animus.[19]   <u>See</u> <u>Damon v. Flemming Supermarkets of Florida Inc.</u>, 196 F.3d 1354, 1361 (11th Cir. 1999)   ("We are not in the business of adjudging whether employment decisions are prudent or fair. Instead, our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision.").   This court is not a super-personnel department that referees, or second-guesses, an

_____

19.   Penn claims that Crow has a history of harassing women.   In fact, his ex-wife filed two complaints alleging domestic violence.   These charges were either dismissed or resulted in verdicts of acquittal. Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 33), Deposition of John Crow, pp. 59-65;   Ex. K.   This alleged conduct occurred at home, not in the employment context, and allegedly involved a significant other, not a co-worker.   Plus, none of these allegations can be substantiated.   Thus, they are not sufficiently probative of Crow's relationship with women in the workplace to imply a discriminatory animus against Penn.

23

employer's handling of personal disputes between employees.  See Wilson v. B/E Aero., Inc., 376 F.3d 1079, 1092 (11th Cir. 2004).  The court's concern is ferreting out employment actions taken for discriminatory reasons.  Thus, Crow's actions on May 7 do not help Penn prove that ADOC's decision to suspend her from overtime based on tardiness is pretextual.

No evidence in the record would allow a reasonable fact-finder to conclude that the defendants' proffered legitimate reason for denying Penn overtime is pretextual.  Therefore, the defendants are entitled to summary judgment on Penn's disparate-treatment claims.


## B. Retaliation

To establish a prima-facie case of retaliation, Penn must show (1) a statutorily protected expression; (2) an adverse-employment action; and (3) a causal link between the protected expression and the adverse action.  Raney v. Vinson Guard Service Inc., 120 F.3d 1192, 1196 (11th

**24**

Cir. 1997).  ADOC concedes for the purposes of summary judgment that Penn engaged in protected expression and that the denial of overtime was an adverse-employment action.

In order for an employee to prove a causal link, the employer must, at a minimum, be aware of the protected expression when it takes the adverse action.  Raney, 120 F.3d at 1197.  Because Penn was denied overtime at Kilby before she filed her EEOC charge or this lawsuit, that adverse action cannot support a claim for retaliation. See Griffin v. GTE Fla., Inc., 182 F.3d 1279, 1282 (11th Cir. 1999) (noting that "the adverse employment action must follow the statutorily protected conduct" to state a prima-facie case of retaliation).  Therefore, Penn can state a claim for retaliation only if she proves a causal link between her EEOC charge and her denial of overtime at the Work Center.

An "employee may prove the causal connection by showing a close time-link between the adverse-employment

action and the protected activity." Johnson v Auburn University, ___ F.Supp.2d ___, 2005 WL 3088331 (M.D. Ala. 2005) (Thompson, J.). "The shorter the period between the two events, the stronger the inference that the adverse action was improperly motivated; conversely, a long period of time between the protected conduct and adverse-employment action will negate an inference that the adverse action was caused by the protected expression." Id.

"The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" Clark County Sch. Dist. v. Breeden, 532 U.S. 268, 273 (2001). The Supreme Court has cited with approval decisions in which a three- to four-month gap between the protected conduct and adverse action was insufficient to establish a causal connection. Id. (citing Richmond v. ONEDOK,

<u>Inc.</u>, 120 F.3d 205, 209 (10th Cir. 1997) (three-month period insufficient) and <u>Hughes v. Derwinski</u>, 967 F.2d 1168, 1174-75 (7th Cir. 1992) (four-month period insufficient)).  In <u>Higdon v. Jackson</u>, 393 F.3d 1211 (11th Cir. 2004), the Eleventh Circuit held that, by itself, a three-month period between complaints of discrimination and an alleged assault by a supervisor was too great to allow a reasonable inference of causal relation.  <u>Id.</u> at 1221.  <u>See also</u> <u>Miller v. Lectra, USA, Inc.</u>, 145 Fed. Appx. 315, 318 (11th Cir. August 10, 2005) (unpublished) (holding that, by itself, a seven-month gap between complaint of discrimination and termination was insufficient to prove causal connection).[20]

_____

20.  The court notes that in <u>Gupta v. Fla. Bd. of Regents</u>, 212 F.3d 571, 590 (11th Cir. 2000), the court held that an approximately seven-month gap between a complaint of sexual harassment (protected expression) and a denial of an extension of tenure and denial of a merit raise (adverse actions) might, by itself, be sufficient to establish causation.  To the extent <u>Gupta</u> is still good law in light of <u>Clark County</u>, the denial of the extension of tenure and the denial of the merit raise were actually the first opportunity the employer had to retaliate against the employee following her protected
(continued...)

Here, Penn has presented no admissible evidence of a causal relation beyond the timing of her one-month suspension relative to her filing of the EEOC charge. The court concludes that she cannot state a prima-facie case of retaliation because the filing of her EEOC charge is too far removed temporally (seven months) from the denial of overtime at the Work Center to support an inference of causal connection without any other evidence of retaliatory intent.  See Clark County, 532 U.S. at 273.  This is particularly true here because Penn was allowed to continue working overtime on third shift at Kilby after she filed her EEOC charge (without any retaliation) and was initially afforded the opportunity to work overtime at the Work Center after she had filed

_____

20.  (...continued)
conduct.  In contrast, the employer in Clark County, Higdon, and Penn's case (as well as every other case cited here) had ample opportunity to engage in the same type of alleged retaliation during the period between the protected expression and the alleged retaliation. Therefore, any inference of causal connection is undermined because the employer could have, but chose not to, retaliate during the lengthy interval.

her EEOC charge.  Essentially, ADOC allowed Penn to work overtime at Kilby and even gave her additional opportunities to work overtime at the Work Center during the seven months between the EEOC charge and the Work Center incident.  This contradicts any inference that the Work Center adverse action was retaliatory.[21]

------------------------------------------------------------

21.  Although she does not address it in her brief, she filed a grievance with ADOC because she had difficulties scheduling overtime at the Work Center in September 2004.  Apparently, she requested certain overtime shifts, but the shift supervisor did not add her to the schedule.  Defendants' brief in support of summary judgment (Doc. No. 28), Deposition of Brenda Penn, pp. 92-94; Ex. 3, Grievance, ¶ 4.

It is not clear that this constitutes an adverse-employment action, particularly because Penn declined several opportunities to work overtime and did not return a phone call from the shift supervisor.  Defendants' brief in support of summary judgment (Doc. No. 28), Ex. 3, Grievance, Statement of Demetrius Holstick.  Even if it did constitute an adverse-employment action, Penn cannot prove a causal link between this and her EEOC charge because it is even more temporally removed than the one-month suspension.

The court notes that she might be able to prove a causal link between the unavailability of overtime and her appeal of the denial of overtime at Work Center. However, that internal grievance is not protected expression under Title VII or the ADEA because she did
(continued...)

Even assuming Penn could prove a prima-facie case, she cannot overcome ADOC's legitimate, non-discriminatory reason for suspending her from overtime at the Work Center. ADOC maintains that it suspended her because she reported to scheduled overtime at the Work Center late. In fact, Penn's own testimony supports ADOC's proffered non-discriminatory reason for denying her overtime. She testified that she was suspended from overtime at the Work Center because her supervisors thought she was Kramer Penn, who had been tardy and was unreliable. Thus, by her own admission, the most that she can prove is that she was denied overtime because of a mistaken identity. Just as "an employer who treats two employees differently because of a mistaken belief in the existence of a neutral reason" has not engaged in discrimination, Silvera v. Orange County Sch. Bd., 244 F.3d 1253, 1261 (11th Cir. 2001), an employment action taken because of a mistaken understanding of facts will not support a

---

    21.  (...continued)
not claim her one-month suspension was based on age or gender or was retaliatory.  By her own admission, she claimed the suspension was caused by mistaken identity.

claim for retaliation.  Simply put, no evidence supports her contention that the denial was in retaliation for her EEOC charge, and her conclusory assertions of retaliation are not enough.  See Earley v. Champion Int'l Corp., 907 F.2d 1077, 1083 (11th Cir. 1990).

Because Penn has not proven a prima-facie case of retaliation or advanced any evidence that would allow a reasonable fact-finder to conclude that the defendants' proffered non-discriminatory reason for not reclassifying her was pretextual, the defendants are entitled to summary judgment on Penn's retaliation claims.[22]

_____

22.  In her deposition, Penn states that another corrections officer told her that Warden Daniels, who ran the Work Center, said in a staff meeting that he did not want Penn working at the Work Center because she had "filed papers" against Billups.  Plaintiff's brief in opposition to defendants' motion for summary judgment (Doc. No. 33), Deposition of Brenda Penn, p. 105. Although this would be evidence, even direct evidence, of retaliation, Penn's testimony is inadmissible hearsay, see Fed. R. Evid. 802.  Thus, the court will not consider it on summary judgment.  See Fed. R. Civ. P. 56(e).

Also, Penn alleges that a sergeant on duty at the Work Center cursed her out and yelled at her during a phone call.  Defendants' brief in support of summary
(continued...)

31

IV. CONCLUSION

For the foregoing reasons, the court concludes that summary judgment is due to be granted on all of Penn's claims against all defendants.

An appropriate judgment will be entered.

DONE, this the 15th day of December, 2005.


_____/s/ Myron H. Thompson_____
**UNITED STATES DISTRICT JUDGE**

_____

22.  (...continued)
judgment (Doc. No. 28), Ex. 3, Grievance, ¶ 4.  Nothing in the record suggests that this sergeant was involved in either decision to suspend Penn from overtime.  Moreover, this alleged exchange occurred several months after Penn had been reinstated to overtime at the Work Center and at least a year after she had been reinstated to overtime on Kilby's third shift.  Finally, Penn does not dispute that the sergeant merely said, "damn you," when complaining that Penn was trying to tell him how to set up the schedule for his shift.  He never mentioned her age, gender, or her EEOC charge in conversations with her. This exchange is ireelevant.